IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KENDALL MAURICE SMITH, III, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. Action No. 18-387-CFC |
| | ) |
| KATRINA BURLEY, | ) |
| | ) |
| Defendant. | ) |

---

Kendall Maurice Smith, III, James T. Vaughn Correctional Center, Smyrna, Delaware. Pro Se Plaintiff.

Zi-Xiang Shen, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for Defendant Katrina Burley.

**MEMORANDUM OPINION**

March 7, 2022
Wilmington, Delaware

**CONNOLLY, Chief Judge:**

Plaintiff Kendall Maurice Smith, III, an inmate at the James T. Vaughn Correctional Center ("JTVCC") in Smyrna, Delaware, filed this lawsuit pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. (D.I. 2, 10)[1] He appears *pro se* and was granted permission to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. Pending is Defendant Katrina Burley's motion for summary judgment, Plaintiff's opposition, and Defendant's motion to strike.[2] (D.I. 73, 82, 83)

## I. BACKGROUND AND FACTS AS PRESENTED BY THE PARTIES

Plaintiff alleges that he suffered for a number of years due to extreme delay and denial of medical treatment related to his eyes, vision, and prescription glasses. (D.I. 2, 10) Upon screening, the Court liberally construed the allegations and allowed Plaintiff to proceed on what appeared to be cognizable medical needs claims related to Grievance 334538 submitted by Plaintiff on April 10, 2016. (*See* D.I. 11, 12) All other claims were dismissed. (*Id.*) Plaintiff alleges that on May 6, 2016 his grievance was heard by a grievance committee comprised of the now dismissed medical defendants and Burley, the only remaining Defendant. The grievance committee granted in part and denied in part Grievance 334538.

Burley has served as an inmate grievance chairperson ("IGC") at JTVCC since November 2015, and in that position she reviews and processes inmate grievances pursuant to institutional grievance policies and procedures. (D.I. 76 at 67) Her duties

---

[1] The case proceeds on the original complaint at Docket Items 2 and 10. (*See* D.I. 59).
[2] Defendant moves to strike Plaintiff's response to the motion for summary judgment as untimely and unresponsive. (D.I. 83) The Court will deny the motion and will consider Plaintiff's response.

include collecting inmates grievances, forwarding the grievances to the appropriate staff, scheduling and facilitating grievance hearings, and communicating decisions to inmates. (*Id.* at 67) Burley is present at medical grievances hearings for security purposes and to collect paperwork from the Medical Grievance Committee ("MGC"). (*Id.* at 68) She is not a member of the MGC and does not vote on whether to uphold or deny an inmate's medical grievance. (*Id.*) She has never voted on a medical grievance and she is recorded as an "abstain from vote" on all medical grievances. (*Id.*) Once the MGC votes on a medical grievance Burley advises the inmate of the decision and provides the inmate with the necessary paperwork to submit an appeal. (*Id.*) Burley is not a medical professional, has no role in an inmate's medical care, and had no role in Plaintiff's medical care. (*Id.*)

Delaware Department of Correction Policy Number A11,[3] effective September 2, 2015, governs the procedure for medical grievances following an inmate's timely submitted grievance. (*Id.* at 28-32) The policy prohibits inmates "from submitting a grievance before attempting to use the sick call request" and submitting duplicative grievances, and requires inmates to submit a completed grievance form "within 7 calendar days of the incident, *i.e.* after the Sick Call appointment." (*Id.* at 29 at ¶ VI.B.) Upon receipt of a properly submitted grievance, a three-step process is followed.

Step 1 provides for informal resolution. (*Id.* at 29-30) When an inmate rejects the informal resolution within the required time-frame, the grievance proceeds to Step 2.

---

[3] The policy falls under the Bureau of Correctional Healthcare Services.

(*Id.* at 30 at ¶ VI.E.3.) At Step 2, the IGC (i.e., Defendant) forwards the grievance to the MGC, which conducts a hearing on the grievance within 30 days of the inmate's rejection. (*Id.* at ¶ VI.F.2.) The MGC is comprised of three medical staff members, at least one of whom is a licensed nursing professional. (*Id.*) The IGC is required to attend the hearing and record the hearing information. (*Id.*) Upon review, the MGC decides whether to deny or uphold the grievance. (*Id.*)

Step 3 is the formal appeal process. (*Id.* at 31) A Bureau of Correctional Healthcare Services employee who is designated as the Bureau Grievance Officer ("BGO") reviews the grievance and makes a recommendation to the Bureau Chief to "direct[ ] additional investigation, uphold or deny the offender's remedy request, mak[e] [a] partial accommodation, or request an outside review." (*Id.*) The Bureau Chief makes a final decision whether to accept or reject the BGO recommendation. (*Id.*)

Plaintiff was prescribed glasses in 2013. (D.I. 2 at 5) On September 13, 2014, he submitted a grievance for vision care and later abandoned the grievance. (*Id.* at 24-26) On November 2, 2015, Plaintiff submitted another grievance, No. 321826, complaining that he needed new glasses because his glasses had broken and their prescription was unsuitable. (*Id.* at 33, 38) In the meantime, on November 19, 2015, Plaintiff was seen by medical for vision issues. (*Id.* at 64) The MGC heard Plaintiff's grievance on December 9, 2015, and denied it; IGC Burley was recorded as abstaining from the vote. (*Id.* at 35, 37) . The MGC noted that Plaintiff had not placed a sick call before submitting a grievance and instructed Plaintiff to use the sick call protocol. (*Id.* at

3

37) Plaintiff stated that he wished to appeal the MGC's decision, but he did not. (*Id.* at 36)

On March 29, 2016, Plaintiff was seen at medical, requested new glasses, and was examined. (*Id.* at 62) On April 10, 2016, Plaintiff submitted Grievance No. 334538,[4] complained that the MGC denied Grievance 321826 in error, requested a $4.00 refund of a fee he paid for the March 2016 evaluation, and asked to see an optometrist. (*Id.* at 39, 45) At Step 1, a healthcare staff member instructed the facility business office to refund Plaintiff the $4.00 fee for the March 2016 visit and referred Plaintiff for a vision consultation. (*Id.* at 39) The grievance proceeded to a Step 2 hearing with the MGC (*Id.* at 39, 42) The MGC held a hearing on May 6, 2016, and upheld the remedy, with IGC Burley abstaining from the vote. (*Id.* at 41) Plaintiff appealed. (Id. at 41-42)

On June 14, 2016, Plaintiff underwent a two-year follow-up optometry exam. (*Id.* at 60-62) On June 22, 2016, the BGO recommended upholding the remedy that Plaintiff receive a $4.00 refund and denying all other aspects of the grievance. (*Id.* at 43) The same day, the Bureau Chief issued a final decision that accepted the BGO's recommendation. (*Id.* at 44)

On July 15, 2016, Plaintiff received new glasses. (*Id.* at 60) In late 2016 and 2017 Plaintiff advised medical on numerous occasions that he had broken his glasses; on each occasion, his glasses were either repaired or replaced. (*Id.* at 56, 57, 58, 65)

---

[4] The surviving medical needs claim is related to Grievance 334538.

4

Plaintiff received new glasses on March 5, 2018, and filed this action on March 12, 2018. (D.I. 2; D.I. 76 at 56)

Burley moves for summary judgment on the grounds that: (1) the claims are time-barred; (2) Plaintiff fails to show Burley's personal involvement; (3) Plaintiff fails to establish an Eighth Amendment violation; and (4) the claims are barred by Burley's qualified immunity. (D.I. 74)

## II.    LEGAL STANDARDS

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the burden of persuasion at trial would be on the non-moving party, then the moving party may satisfy its burden of production by pointing to an absence of evidence supporting the non-moving party's case, after which the burden of production then shifts to the non-movant to demonstrate the existence of a genuine issue for trial.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–61 (3d Cir. 1989).

Material facts are those "that could affect the outcome" of the proceeding. *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011).  "[A] dispute about a material fact is genuine if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." *Id*. (internal quotation marks omitted).  A non-moving party

5

asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). The non-moving party's evidence "must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Williams*, 891 F.2d at 460-61.

The court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). "[T]he facts asserted by the nonmoving party, if supported by affidavits or other evidentiary material, must be regarded as true . . . ." *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996). If "there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment." *Id.*

### III.  DISCUSSION

Burley moves for summary judgment on a number of grounds. The Court turns first to the case dispositive issue of Burley's personal involvement. Burley argues that Plaintiff has failed to establish her personal involvement as required to impose liability under 42 U.S.C. § 1983. Plaintiff responds that there is a "causal link" between the

6

actions of Burley and the challenged conduct and that Burley confirmed her personal involvement and responsibility in her declaration.

The Eighth Amendment's prohibition against cruel and unusual punishment obligates jail authorities to provide medical care to inmates. *See Estelle v. Gamble*, 429 U.S. 97, 103 (1976); *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). In order to establish an Eighth Amendment medical claim, an inmate must allege acts or omissions by prison officials sufficiently harmful to evidence deliberate indifference to a serious medical need. *See Spruill v. Gillis*, 372 F.3d 218, 235-36 (3d Cir. 2004); *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003). In the context of medical care, the relevant inquiry is whether the defendant was: (1) deliberately indifferent (the subjective component) to (2) the plaintiff's serious medical needs (the objective component). *See Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987); *West v. Keve*, 571 F.2d 158, 161 (3d Cir. 1979). A non-physician defendant cannot be considered deliberately indifferent for failing to respond to an inmate's medical complaints when the inmate is already receiving treatment by the prison's medical staff. *See Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993).

Liability in a 42 U.S.C. § 1983 action is personal in nature; to be liable, a defendant must have been personally involved in the wrongful conduct. In other words, a defendant is "liable only for [his] own unconstitutional conduct. *Barkes v. First Corr. Med.*, Inc., 766 F.3d 307, 316 (3d Cir. 2014), *rev'd on other grounds sub nom. Taylor v. Barkes*, 575 U.S. 822 (2015). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. And a defendant's

7

knowledge of a risk to health and safety 'can be proved indirectly by circumstantial evidence to the effect that the excessive risk was so obvious that the official must have known of the risk.'" *Thomas v. Tice*, 948 F.3d 133, 138 (3d Cir. 2020) (citations omitted).

Nothing in the record evidence shows or suggests that Burley was personally involved in the medical needs claim raised by Plaintiff or that Burley was deliberately indifferent to his serious medical needs. Rather, the record evidence makes clear that Burley, a non-medical professional, is tasked with administrative duties as an institutional grievance chairperson. Those duties require her to be present at MGC hearings for security purposes and to collect paperwork. She is not a member of the MGC and she does not vote on medical grievances. Nor does she provide medical care to inmates. There is no record evidence that Plaintiff ever sought medical care from Burley. Moreover, Plaintiff's medical records indicate that he is provided medical care for his vision issues. There is nothing in the record that indicates Burley was deliberately indifferent to Plaintiff's medical needs. In short, no reasonable jury could find for Plaintiff. Therefore, the Court will grant her motion for summary judgment.

## IV. CONCLUSION

For the above reasons, the Court will: (1) grant Burley's motion for summary judgment (D.I. 73); and (2) deny Burley's motion to strike (D.I. 83).

An appropriate order will be entered.

8